# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPE COD HOSPITAL<br>27 Park Street<br>Hyannis, MA 02601 | )<br>)<br>)<br>) |
| and | ) |
| FALMOUTH HOSPITAL ASSOCIATION, INC.,<br>D/B/A FALMOUTH HOSPITAL<br>100 Ter Heun Drive<br>Falmouth, MA 02540 | )<br>)<br>)<br>)<br>) |
| and | ) |
| FLUSHING MEDICAL CENTER, INC.<br>Parsons Blvd. and 45th Ave.<br>Flushing, NY 11355 | )<br>)<br>)<br>) |
| and | ) |
| BROOKDALE UNIVERSITY HOSPITAL<br>MEDICAL CENTER, INC.<br>1 Brookdale Plaza<br>Brooklyn, NY 11212 | )<br>)<br>)<br>)  Case No. 1:07-cv-01883 (RCL) |
| and | ) |
| THE JAMAICA HOSPITAL MEDICAL CENTER<br>DIAGNOSTIC AND TREATMENT CENTER CORP.<br>8900 Van Wyck Expressway<br>Jamaica, NY 11418, | )<br>)<br>)<br>) |
| Plaintiffs,<br>v. | )<br>) |
| MICHAEL O. LEAVITT, SECRETARY<br>United States Department of Health and Human Services<br>200 Independence Avenue, N.W.<br>Washington, DC  20201, | )<br>)<br>)<br>) |
| Defendant. | ) |

---

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR SUMS DUE UNDER THE MEDICARE ACT

I.   **INTRODUCTION AND NATURE OF SUIT**

1.   This is an action for review of rates for inpatient hospital services paid under the Medicare prospective payment system ("PPS") that are reflected in final rules adopted by the Defendant, the Secretary of the U.S. Department of Health & Human Services, for Federal fiscal years 2007 and 2008 ("FFY 2007" and "FFY 2008").   The Medicare statute requires certain adjustments to the payment rates to maintain budget neutrality, but the Secretary made these particular adjustments at issue in a manner that, contrary to law, systematically reduced aggregate Medicare payments to all hospitals.

2.   Several factors are used to calculate Medicare payments under PPS, including a "standardized amount" and a "wage index."   The standardized amount is the base payment rate under the PPS and a hospital's wage index adjusts that base payment rate upward or downward to reflect average hospital wage levels in the hospital's region.

3.   In 1997, Congress established a "rural floor" for the wage index for all fiscal years after Federal fiscal year 1997.   Balanced Budget Act of 1997, § 4410(a), Pub. L. No. 105-33 ("BBA"), 42 U.S.C. § 1395ww note.   Congress intended for the rural floor to redistribute Medicare payments among hospitals by increasing the wage index (and thus payments) for a hospital located in an urban area that, absent the rural floor, would be assigned a wage index value lower than the wage index for rural hospitals in the same State.   Id.   Congress required, however, that the rural floor have a budget neutral effect on Medicare payments to all hospitals, directing the Secretary to adjust the wage index "in a manner which assures that the *aggregate* payments made . . . are not greater or less than those which would have been made" if the rural floor did not apply.   Id. § 4410(b) (emphasis added).   Overall, Congress intended for the rural floor to have the effect of redistributing Medicare PPS payments among hospitals without increasing or decreasing the total Medicare PPS payments to *all* hospitals – to adjust the relative

size of each hospital's "slice" of the reimbursement "pie," in other words, without changing the size of the pie itself.

4.     For FFY 2007 and prior years, the Secretary's agency has said that it accounted for the effect of the wage index rural floor through a "cumulative" adjustment to the "standardized amount," the base payment rate that each Medicare hospital receives.  Properly applied, in the first year of the rural floor, a cumulative adjustment would reduce the base payment rate to offset the total projected increase in payment that otherwise would result from the application of the rural floor to the wage index.  If the rural floor produced an increase in the wage index that would result in an additional payment of $1 to an urban hospital, for example, that dollar of additional reimbursement would be offset by an across-the-board downward adjustment in the standardized amount applicable to all hospitals.  The standardized amount would be adjusted in this way in order to maintain budget neutrality as Congress required – to keep the reimbursement "pie" the same size.  For subsequent years, an appropriate cumulative adjustment should account only for the incremental change, if any, in the effect of the rural floor from one year to the next.  For example, if the rural floor produced a further increase of 25 cents in the urban hospital's payment in Year Two over its Year One payment, the additional 25-cent increment would be offset through a downward adjustment to the standardized amount in Year Two.  This adjustment would remove the incremental 25-cent increase for Year Two, not the total $1.25 effect of the rural floor, as $1 of that increase was already offset through a downward adjustment to the standardized amount in Year One.  If there was no rural floor adjustment at all in Year Two versus Year One, moreover, no additional adjustment to the standardized amount would be necessary.

5.     The Secretary did not calculate and implement the adjustments he made to the standardized amount for FFY 2007 and prior years in this way.  Adjustments made to the

standardized amount for the effect of the rural floor on the wage index for FFY 2007 and all prior years instead have had a compounding, duplicative effect from year to year, so that, under the methodology the Secretary actually used, the standardized amount would be reduced from one year to the next even if the effect of the rural floor did not change from one year to the next. Under the Secretary's version of a "cumulative" approach, the same $1 in rural floor adjustments recovered in Year One in the example above would be recovered again and again in subsequent years through duplicative downward adjustments to the standardized amounts (*i.e.*, the "pie" would get smaller), even if there were no change in the effect of the rural floor in those years (*i.e.*, the relative size of the "slices" stayed the same).

6.    During the comment period on the rule setting the Medicare payment rates for FFY 2007, the Secretary was notified that the calculation of the cumulative rural floor budget neutrality adjustment applied to the standardized amount was erroneous. The Secretary and his agency failed to respond to, or even acknowledge, that comment on the rule for FFY 2007. The agency also did not change its calculation of the rural floor budget neutrality adjustment for FFY 2007. As a result of this error, all hospitals under the PPS have been paid less than they should have been paid and, in violation of section 4410(b) of the BBA, aggregate PPS payments made to all hospitals for FFY 2007 were less than they would have been if Congress had not enacted the rural floor. In the name of "budget neutrality," in other words, the Secretary has actually destroyed that concept, systematically *shrinking* the Medicare reimbursement budget every year.

7.    After the plaintiff hospitals and many others appealed from the determination of the Medicare payment rates for FFY 2007, the Secretary proposed a change in implementation of the rural floor budget neutrality adjustment for FFY 2008. In particular, the Secretary proposed to implement the rural floor budget neutrality requirement through a non-cumulative adjustment to the wage index for FFY 2008 instead of a cumulative adjustment to the standardized amount.

4

Properly applied, a non-cumulative adjustment to the wage index would measure the full effect of the rural floor for each year, and each year's adjustment would remove an amount corresponding to the total projected increase in payment that otherwise would result from the application of the rural floor for that year, without duplicating any prior adjustment.

8.     In the final rule for FFY 2008, the Secretary adopted the proposed change to a non-cumulative adjustment to the wage index, and then reduced the wage index for FFY 2008 by an amount projected to reflect the full effect of the rural floor in that year.  In the same rule, the Secretary also increased the standardized amount by a small percentage.  In the preamble to the final rule, the Secretary stated that this add-back to the standardized amount restored what was removed from the standardized amount to account for the effect of the rural floor in the previous year only, FFY 2007, but not the full amount that was already removed from the standardized amount for the effect of the rural floor in all prior years since 1998 (when the rural floor became effective).  Because the rural floor adjustment to the wage index for FFY 2008 removed the full effect of the rural floor for FFY 2008, and because the add-back to the standardized amount restored less than the full amount previously removed from the standardized amount for the effect of the rural floor in all prior years, aggregate payments for FFY 2008 and all subsequent years are and will be less than the payment that would be made for the current and future periods if the rural floor had not been established.  Again, the Secretary has violated the budget neutrality requirement of section 4410(b) of the BBA by applying the "budget neutrality" adjustment in a manner that is not budget neutral at all, but instead shrinks the overall reimbursement "pie."

9.     The preamble to the proposed and final rule for FFY 2008 also stated the Secretary's position that both the prior and the new methods for implementing the rural floor budget neutrality requirement were equally compatible with the statute and produced substantially the same results, yet the Secretary declined to identify the reason for the change in

implementation, as commenters had requested.  Further, in response to a comment that the Secretary should disclose known errors in the prior adjustments and the current impact of those errors so that hospitals could have meaningful opportunity to evaluate the impact and validity of the proposed changes for FFY 2008, the Secretary simply demurred that errors are unavoidable and beyond the scope of the rule for 2008 and that, in any event, he has a policy against correcting for current and future effects of past errors in the establishment of prospective PPS rates.

10.    All five of the plaintiff hospitals in this case timely appealed the Secretary's determination of the PPS payment rates for FFY 2007 to the Secretary's Provider Reimbursement Review Board ("PRRB" or "Board") pursuant to 42 U.S.C. § 1395oo(a).  Two of them also appealed the determination of the PPS payments rates for FFY 2008.  In the proceedings below, the hospitals requested that the Board make a determination that it lacks authority to decide the legality of the Secretary's implementation of the rural floor budget neutrality requirement for FFY 2007 and FFY 2008 and that the hospitals therefore are entitled to expedited judicial review ("EJR") of those determinations pursuant to the EJR provisions of the Medicare Act, 42 U.S.C. § 1395oo(f)(1).  The Board failed to make that determination and, instead, denied the requests based on the incorrect conclusion that the applicable statute and implementing regulations preclude Board or judicial review of any determination of the Secretary relating to budget neutrality.

11.    This Court has jurisdiction over this action for three fundamental reasons.  First, the Medicare Act provides for expedited judicial review over this action because the PRRB failed to determine that it has authority to decide the validity of the Secretary's determinations of the PPS rates for the fiscal years at issue within the 30-day period required by 42 U.S.C. § 1395oo(f)(1).  Methodist Hospitals of Memphis v. Sullivan, 799 F. Supp. 1210 (D.D.C. 1992),

rev'd on other grounds, Administrators of Tulane Educational Fund v. Shalala, 987 F.2d 790, 794 n.4 (D.C. Cir. 1993).   Second, there is strong presumption of review that cannot be overcome unless the Secretary can show clear Congressional intent to preclude review.   Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670-72 (1986).   And, third, when Congress established the PPS, it amended the Medicare Act expressly for the purpose of affording hospitals the right to appeal determinations of the Secretary as to the PPS payment rates, and the matters here are not among the very limited types of determinations that are expressly precluded from review.   See 42 U.S.C. §§ 1395oo(a), 1395oo(g)(2), 1395ww(d)(7), 1395ww(e)(1).

12.    On the merits, it is clear that the Secretary's Medicare rate determinations for 2007 and 2008 are wrong and must be corrected.  For the periods at issue, the Secretary has implemented the rural floor budget neutrality requirement in a way that assures that aggregate payments are not budget neutral.  Instead of effecting adjustments that maintain an aggregate level of payment while redistributing payments among hospitals through the rural floor, the Secretary's "budget neutrality" adjustments assure that aggregate payments for past, present and future years are less than the payments that would have been made if the rural floor had not been established, in violation of the clear mandate of section 4410(b) of the BBA.  Moreover, the identification of this error was obscured for years by the lack of clarity and relevant detail in the Secretary's notices of the final rules for the PPS.  Making matters worse, after having been put on notice of his error in 2006, the Secretary not only failed to correct the error but took steps to camouflage the error for FFY 2007 and FFY 2008 even as he cemented the effect of that error into the Medicare payment rates that will be applied for subsequent years.

13.    In summary, the Secretary's actions are arbitrary, capricious, and contrary to law. They cannot be squared with either the Balanced Budget Act or logic, and are the product of a

plainly deficient rulemaking in which the Secretary first obscured the calculation and effect of his "budget neutrality" adjustments and then ignored public comments when errors in those adjustments eventually were discovered and raised with the agency.

**II.**    **PARTIES**

14.    Plaintiffs are the following five non-profit hospitals that participate in the Medicare program:

a.    Cape Cod Hospital, Medicare provider number 22-0012, an affiliate of Cape Cod Healthcare, Inc.;

b.    Falmouth Hospital Association, Inc., doing business as Falmouth Hospital, Medicare provider number 22-0135, an affiliate of Cape Cod Healthcare, Inc.;

c.    Flushing Medical Center, Inc., Medicare provider number 33-0193, an affiliate of Medisys Health Network, Inc.;

d.    Brookdale University Hospital Medical Center, Inc., Medicare provider number 33-0233, an affiliate of Medisys Health Network, Inc.; and

e.    The Jamaica Hospital Medical Center Diagnostic and Treatment Center Corp., Medicare provider number 33-0014, an affiliate of Medisys Health Network, Inc.

15.    Defendant Michael O. Leavitt (the "Secretary") is Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

16.    The Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"), is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program.

### III.    JURISDICTION AND VENUE

17.    This action arises under the Medicare Act, title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq.

18.    Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii) and 1395oo(f)(1).

19.    Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

### IV.    MEDICARE PAYMENT FOR INPATIENT HOSPITAL SERVICES

20.    The Federal Medicare program provides health insurance to the aged, blind and disabled under title XVIII of the Act.

21.    Part A of the Act covers inpatient hospital services furnished to inpatients, and Part B of the Act covers hospital outpatient services.  See 42 U.S.C. §§ 1395d(a)(1) (inpatient), 1395k(a)(2)(B) (outpatient).

#### A.    Cost Reimbursement System

22.    Until 1983, Medicare reimbursed hospitals for the "reasonable cost" of inpatient hospital services furnished to Medicare patients.  42 U.S.C. § 1395f(b); see also Washington Hosp. Ctr., v. Bowen, 795 F.2d 139, 141 (D.C. Cir. 1986).

23.    Under the cost reimbursement system, a hospital's allowable operating cost per discharge was limited by a rate-of-increase ceiling, referred to as the "target amount," that was established under section 1886(b) of the Act, 42 U.S.C. § 1395ww(b).    See generally Georgetown Univ. Hosp. v. Bowen, 862 F.2d 323, 324 & n.1 (D.C. Cir. 1988).

#### B.    Prospective Payment System (PPS)

24.    The Social Security Amendments of 1983 instituted a new prospective payment system for the operating costs of inpatient hospital services, referred to hereinafter as the "PPS."

Social Security Amendments of 1983, Pub. L. No. 98-21, § 601. See Georgetown, 862 F.2d at 324.

25.    Hospitals subject to the PPS are paid on the basis of prospectively-established rates for each patient discharge. 42 U.S.C. § 1395ww(d); 71 Fed. Reg. 47870, 47875-76 (Aug. 16, 2006) (final PPS rule for FFY 2007).

26.    During an initial four-year transition period, these PPS payments were based in part on the hospital-specific "target amount" derived from a hospital's allowable cost per discharge under the prior cost reimbursement system, and based in part on a prospectively-established Federal standardized amount for each DRG. 42 U.S.C. § 1395ww(d)(1)(A). See also Georgetown, 862 F.2d at 324 & n.1; Washington Hosp. Ctr. v. Bowen, 795 F.2d at 142.

27.    In general, for the post-transition periods at issue, the PPS payment per discharge is based on the standardized amount, a wage index value that is applied by hospital to the labor-related share of the standardized amount, and a weighting factor determined by the Secretary for the diagnosis-related group ("DRG") assigned to the patient's illness or condition. See generally 71 Fed. Reg. at 47875-76.

**C.    Standardized Amount**

28.    The standardized amount is the base payment rate per discharge under the PPS. 42 U.S.C. § 1395ww(d)(3).

29.    The standardized amount is divided into a labor-related share and a nonlabor-related share. See 42 U.S.C. § 1395ww(d)(3)(E); 71 Fed. Reg. at 47876.

**D.    DRGs**

30.    When Congress enacted the PPS, it directed the Secretary to establish a system for classifying inpatient hospital discharges by DRGs and adjusting PPS payment rates to account for relative differences in resources required to care for patients in different DRGs. Social

Security Amendments of 1983, § 601(e), adding § 1886(d)(4) to the Act (codified at 42 U.S.C. § 1395ww(d)(4)). See also 71 Fed. Reg. at 47879 (describing DRGs for FFY 2007).

31.    For example, for FFY 2007, the Secretary had established more than 500 DRGs, and had assigned a weighting factor to each DRG. See 71 Fed. Reg. at 47879, 48167-203 (describing and listing the DRG weights applied for FFY 2007).

### E.    Wage Index

32.    When Congress enacted the PPS, it also required the Secretary to adjust the labor-related portion of the standardized amount for differences in hospital wage levels by a factor reflecting relative hospital wage levels in different geographic areas.    Social Security Amendments of 1983, § 601(e), adding § 1886(d)(3)(E) to the Act (codified at 42 U.S.C. § 1395ww(d)(3)(E)).

33.    To accomplish the relative wage-level adjustment, the Secretary calculates and assigns a wage index value to each hospital reflecting the relative wage levels in the hospital's geographic area. See 71 Fed. Reg. at 48005 (discussing the wage index for FFY 2007); 71 Fed. Reg. 59886, 59903-68 (Oct. 11, 2006) (listing the wage indexes assigned to all hospitals for FFY 2007).

### F.    Wage Index Rural Floor

34.    In 1997, Congress enacted legislation providing that the wage index for a hospital located in an urban area may not be less than the wage index for hospitals located in rural areas in the same State.  BBA § 4410(a), 42 U.S.C. § 1395ww note.  The 1997 legislation states, in part:

> (a)  IN GENERAL. –For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index applicable under such section to any hospital which is not located in a rural area . . . may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located.

Id.

35.    The above-quoted provision, referred to as the "rural floor," yields payments to some urban hospitals that are greater than the payments that otherwise would have been made to those hospitals.

36.    The rural floor provision is effective for all Federal fiscal years after the fiscal year ended September 30, 1997. Id.

37.    The 1997 legislation also required the Secretary to adjust the wage index for the PPS to account for the effect of the rural floor. BBA § 4410(b). The statute states, in pertinent part:

> (b) IMPLEMENTATION. –The Secretary of Health and Human Services shall adjust the area wage index . . . in a manner which assures that the aggregate payments made under [the PPS] in a fiscal year for the operating costs of inpatient hospital services are not greater or less than those which would have been made in the year if this section did not apply.

Id.

38.    The above-quoted provision requires the Secretary to adjust the wage index as necessary to ensure that the rural floor is implemented in a budget neutral fashion.

39.    No statute precludes administrative or judicial review of any adjustment made by the Secretary to implement the statutory requirement in section 4410(b) of the BBA to assure that aggregate payments under the PPS are not greater or less than those payments that would have been made if the rural floor established under section 4410(a) of the BBA did not apply.

## V.    ERRORS IN THE PPS PAYMENT DETERMINATIONS AT ISSUE

### A.    Method Used to Calculate the Rural Floor Budget Neutrality Adjustment for FFY 2007

40.    In establishing the PPS standardized amount for the FFY 2007, and for prior federal fiscal years, the Secretary adjusted the standardized amount downward to account for greater payments made to some hospitals due to the effect of the wage index rural floor. See 71

Fed. Reg. at 48145-47 (interim final rule for FFY 2007); 70 Fed. Reg. 47278, 47491-93 (Aug. 12, 2005) (final rule for FFY 2006); 69 Fed. Reg. 48916, 49273-75 (Aug. 11, 2004) (final rule for FFY 2005); 68 Fed. Reg. 45346, 45474-76 (Aug. 1, 2003) (final rule for FFY 2004).

41.    The adjustment to the standardized amount for the effects of the wage index rural floor for FFY 2007, and for prior fiscal years, was factored into the standardized amount applied in that fiscal year and carried over to the standardized amount applied in subsequent years. See 71 Fed. Reg. at 48147 ("We do not remove the prior year's budget neutrality adjustments . . . for updated wage data"); 70 Fed. Reg. at 47492 (same); 69 Fed. Reg. at 49274 (same); 68 Fed. Reg. at 45475 (same).

42.    In establishing the PPS standardized amount for FFY 2007, and for prior years, the Secretary used a payment simulation model to determine each year's budget neutrality adjustment to the standardized amount to account for the effect of the rural floor. See 71 Fed. Reg. at 48147; 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76.

43.    In the interim final PPS rule for FFY 2007, the Secretary described the simulation model and the calculation of the resulting budget neutrality adjustment as follows:

> [W]e used FY 2005 discharge data to simulate payments and compared aggregate payments using the FY 2006 relative weights and wage indexes to aggregate payments using the FY 2007 relative weights and wage indexes.   The same methodology was used for the FY 2006 budget neutrality adjustment.
>
>        . . . These budget neutrality adjustment factors are applied to the standardized amounts without removing the effects of the FY 2006 budget neutrality adjustments.

71 Fed. Reg. at 48147.

44.    The Secretary gave similar descriptions of the simulation model and the calculation of the resulting budget neutrality adjustment for the effect of the rural floor in the

preambles to the final PPS rules prior fiscal years.  See 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76.

45.    Beyond the above-quoted description, supra ¶ 43, of the simulation model used to calculate budget neutrality adjustments to the standardized amounts, the Secretary's PPS rules for FFY 2007 and prior years did not address the specific data or data variables that were employed in the payment simulation model to calculate budget neutrality adjustments for the effect of the rural floor.  See 71 Fed. Reg. at 48147; 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76

46.    On information and belief, the Secretary did not calculate the budget neutrality adjustment in the manner described in the above-quoted portion of the preamble to the final rule for FFY 2007, supra ¶ 43, and in the above-cited portions of the preambles to the final rules for prior years.  The payment simulation model used to calculate the adjustment for FFY 2007, for example, did not use the "wage indexes" for FFY 2006 and FFY 2007 as indicated in the above-quotation from the FFY 2007 rule.

**B.    FFY 2007 Rulemaking**

47.    A timely comment notified CMS that its calculation of the budget neutrality adjustment for the effect of the rural floor is duplicative and the duplication has a negative effect on all hospitals subject to the PPS.

48.    The Secretary published notice of an interim final rule for FFY 2007 in the Federal Register on August 18, 2006.  See 71 Fed. Reg. 47870-48434.

49.    The interim final rule for FFY 2007 neither acknowledged nor addressed the comment letter nor the error alleged and described in that comment.  See 71 Fed. Reg. 47870-48434.

50.    On October 11, 2006, the Secretary published notice in the <u>Federal Register</u> of the Secretary's determination of the final payment rates under PPS for FFY 2007.  71 Fed. Reg. 59886.

51.    The October 11, 2006 notice did not acknowledge or address the comment letter or the error alleged and described in that comment.  <u>See</u> 71 Fed. Reg. 59886-60043.

52.    On information and belief, the Secretary did not change the method used to calculate the rural floor budget neutrality adjustment or correct the error identified in the comment letter in calculating the final PPS payment rates for FFY 2007.

C.    <u>**Error in the Determination for FFY 2007**</u>

53.    The Secretary has said that for FFY 2007 and prior years, his agency accounted for the effect of the wage index rural floor through a "cumulative" adjustment to the standardized amount.  72 Fed. Reg. at 47330.

54.    Properly applied, in the first year of the rural floor, a cumulative adjustment to the standardized amount would reduce that base payment rate by an amount corresponding to the total projected increase in payment that otherwise would have resulted from the application of the rural floor.  For subsequent years, the cumulative adjustment would account only for the incremental change in the effect of the floor from one year to the next.

55.    The Secretary did not properly calculate and apply the cumulative rural floor budget neutrality adjustment for FFY 2007 and for prior fiscal years.  The Secretary's adjustments for FFY 2007, and prior years, reduced the standardized amount by an amount reflecting the full effect of the rural floor for each year, and not just the incremental change in the effect of the floor from year to year.  Those adjustments were wrong because each adjustment made for a year after the first year to which the rural floor applied duplicated prior-period adjustments.

56.    The Secretary's budget neutrality adjustment for FFY 2007, therefore, violates section 4410(b) of the BBA, which requires the Secretary to compute that adjustment "in a manner which assures that the aggregate payments made under [the PPS] in a fiscal year for the operating costs of inpatient hospital services are not greater or less than those which would have been made in the year if [the rural floor] did not apply."

D.    **Proposed Change in Implementation for FFY 2008**

57.    On May 3, 2007, the Secretary published notice in the Federal Register of a proposed PPS rule for FFY 2008. 72 Fed. Reg. 24680.

58.    In the proposed PPS rule for FFY 2008, the Secretary proposed a change in the agency's implementation of the budget neutrality requirement with respect to the wage index rural floor for FFY 2008 and subsequent years. 72 Fed. Reg. at 24787-93.

59.    The proposed PPS rule for FFY 2008 proposed to implement the rural floor budget neutrality adjustment through an annual adjustment to the wage index, not through an adjustment to the standardized amount as in prior years. Id. at 24791.

60.    The proposed PPS rule for FFY 2008 did not identify a reason for, or the purpose of, the proposed change in the method for implementing the rural floor budget neutrality requirement for FFY 2008 and subsequent years. Id. at 24787-93.

61.    The proposed PPS rule for FFY 2008 did not address any error in the method that CMS used to implement the rural floor budget neutrality requirement in the PPS rules for fiscal years prior to FFY 2008. Id.

62.    The proposed PPS rule for FFY 2008 also proposed a positive adjustment to the standardized amount, which was labeled as a "Rural Floor Adjustment." Id. at 24839.

63.    The proposed PPS rule for FFY 2008 provided no explanation of the basis or purpose of the proposed "Rural Floor Adjustment" to the standardized amount, nor for the

relationship, if any, between that proposed adjustment to the standardized amount and the proposed change in the method for implementing the rural floor budget neutrality requirement through an annual adjustment to the wage index. Id.

     **E.**    **Comments on Proposed Rule for FFY 2008**

     64.    Within the period allowed for comments on the proposed PPS rule for FFY 2008, the plaintiffs' counsel sent a letter to CMS specifically requesting additional information about the agency's proposed change in the method for implementing the rural floor budget neutrality requirement for FFY 2008 and subsequent years.

     65.    CMS replied to the request for additional information by declining to provide any further information.

     **F.**    **Final Rule for FFY 2008**

     66.    On August 1, 2007, the final PPS rule for FFY 2008 was posted on the CMS website.  The rule was published in the Federal Register on August 22, 2007.  72 Fed. Reg. 47130.

     67.    The preamble to the final PPS rule for FFY 2008 states that CMS applied the rural floor budget neutrality adjustment to the wage index for FFY 2008.  72 Fed. Reg. at 47330.

     68.    The preamble to the final rule for FFY 2008 also states that the rural floor budget neutrality adjustment to the wage index for FFY 2008 is non-cumulative, 72 Fed. Reg. at 47330, meaning that the adjustment made to the wage index for FFY 2008 accounts for the full effect of the rural floor for FFY 2008 (as compared to no floor) and not just the additional incremental effect of the floor from FFY 2007 to FFY 2008.  See id. at 47329 (example of calculation of the budget neutrality adjustment to the wage index for the effect of the rural floor as applied to three hypothetical hospitals).

69.     The preamble to the final PPS rule for FFY 2008 acknowledged that "[m]any commenters requested additional information as to the purpose" of the proposed change in implementation of the rural floor budget neutrality adjustment. 72 Fed. Reg. at 47330. The preamble to the rule, however, does not state the basis, purpose, or reason for the proposed change in implementation of the rural floor budget neutrality requirement.

70.     The preamble to the final PPS rule for FFY 2008 acknowledged receipt of a comment that the methodology for applying the rural floor budget neutrality adjustment for prior years was flawed because it created an "inappropriate duplicating effect" to be "permanently built into the standardized amount." 72 Fed. Reg. at 47330.

71.     Concerning errors in the prior calculations of the "cumulative" budget neutrality adjustments that were made to the standardized amount, the preamble to the final PPS rule for FFY 2008 stated:

> With regard to alleged errors in FYs 1999 through 2007, our calculation of budget neutrality in past fiscal years is not within the scope of this rulemaking. Even if errors were made in prior fiscal years, we would not make an adjustment to make up for those errors when setting rates for FY 2008.

72 Fed. Reg. at 47330.

72.     The preamble to the final rule for FFY 2008 did not address whether the proposed change in implementation of the rural floor budget neutrality requirement would correct problems for prior, current or future fiscal years stemming from any errors in CMS' prior calculations of the rural floor budget neutrality adjustments to the standardized amounts in prior years. See 72 Fed. Reg. at 47330.

73.     The preamble to the final rule for FFY 2008 stated that "the one-time 1.002214 adjustment [to the standardized amount for FFY 2008] is meant to address a single year transition to a noncumulative system of budget neutrality adjustment." 72 Fed. Reg. at 47330.

74.     The addendum to the rule states that the one-time Rural Floor Adjustment to the standardized amount for FFY 2008 (0.2214%) "removes the effect of the budget neutrality adjustment applied in FY 2007 to the standardized amount for application of the rural floor." Id. at 47421.

75.     Neither the preamble nor the addendum to the rule addresses why the Secretary chose to restore the effect of only the prior year's adjustment to the standardized amount for FFY 2008, and not to fully account for, and restore, all prior-period amounts that were taken out of the standardized amount to account for the effect of the rural floor in all prior years.

**G.    Corrected Rule for FFY 2008**

76.     On October 10, 2007, the Secretary published a rule correcting the rates previously established through the final inpatient hospital PPS rule for FFY 2008. 72 Fed. Reg. 57634, Changes to the Hospital Inpatient Prospective Payment Systems and Federal Fiscal Year 2008 Rates; Correction.

77.     According to the Secretary, revision to the FFY 2008 rates was necessary to rectify errors made in calculating the rates for two particular categories of hospitals called sole community hospitals and Medicare-dependent hospitals. Id.

78.     Through the October 10, 2007 correction rule, the Secretary modified the FFY 2008 standardized amount and the FFY 2008 rural floor budget neutrality adjustment. Id. at 57734.

79.     In the correction rule, the Secretary does not claim to have changed the method of calculating the rural floor budget neutrality adjustment.

**H.    Error in the Final Determinations for FFY 2008**

80.     Because budget neutrality adjustments to the standardized amount for fiscal years before FFY 2007 were not reversed, and amounts that were taken out of the standardized amount

before FFY 2007 were not restored to the standardized amount through the positive Rural Floor Adjustment to the standardized amount for FFY 2008, see 72 Fed. Reg. at 47421, the standardized amount determined by the Secretary for FFY 2008 is lower than the standardized amount that would be applied for FFY 2008 if the rural floor had never been established.

81.     Because the rural floor budget neutrality adjustment to the wage index for FFY 2008 accounts for the full effect of the rural floor for FFY 2008, 72 Fed. Reg. at 47329-30, that adjustment duplicates the prior rural floor budget neutrality adjustments to the standardized amount for fiscal years prior to FFY 2007, which were not reversed and restored to the standardized amount through the positive Rural Floor Adjustment to the standardized amount for FFY 2008, 72 Fed. Reg. at 47421

82.     As a result of that duplication, aggregate payments made under the PPS for discharges in FFY 2008, and all subsequent years, for the operating costs of inpatient hospital services, are and will be less than aggregate payments that would be made for discharges in FFY 2008 and all subsequent years if the rural floor had never been established.

## VI.     REVIEW OF PPS PAYMENT DETERMINATIONS

### A.     Administrative Appeals

83.     When it enacted the PPS in the Social Security Amendments of 1983, Congress amended section 1878(a) of the Act to provide hospitals the right to appeal a determination of the Secretary as to the amount of payment under the PPS established in section 1886(d) of the Act. Social Security Amendments of 1983, § 602(h)(1), amending § 1878(a) of the Act (codified at 42 U.S.C. § 1395oo(a)). See also Washington Hosp. Ctr., 795 F.2d at 142, 144-48; D.C. Hosp. Ass'n Wage Index Group Appeal ("DCHA"), reprinted in Medicare & Medicaid Guide (CCH) ¶ 41,025 (Jan. 15, 1993).

84.    Appeals pursuant to section 1878 of the Act, 42 U.S.C. § 1395oo, are taken in the first instance to the Provider Reimbursement Review Board ("PRRB" or "Board").

85.    The PRRB is an administrative tribunal appointed by the Secretary.  42 U.S.C. § 1395oo(h).

**B.    Limited Statutory Exception to Right to Review**

86.    The Social Security Amendments of 1983 also amended section 1878(g) of the Act by adding a paragraph (2) that precludes review by the PRRB or a court of certain PPS determinations "described in section 1886(d)(7)" of the Act.  Social Security Amendments of 1983, § 602(h)(3), adding § 1878(g)(2) of the Act (codified at 42 U.S.C. § 1395oo(g)(2)).  The provision in section 1878(g)(2) of the Act is the only statutory exception to the provision for review under section 1878(a) of the Secretary's PPS payment determinations.

87.    Section 1886(d)(7)(A) of the Act describes "the determination of the requirement, or the proportional amount, of any adjustment effected pursuant to subsection (e)(1) [of section 1886 of the Act]."  42 U.S.C. § 1395ww(d)(7)(A).

88.    The proportional adjustments described in section 1886(d)(7)(A) of the Act, and effected pursuant to section 1886(e)(1) of the Act, are the budget neutrality adjustments to the hospital-specific target amounts and the PPS standardized amounts that were paid to hospitals during the initial PPS transition period for hospital cost reporting periods beginning in Federal fiscal years 1984 and 1985.  42 U.S.C. § 1395ww(e)(1).

89.    When Congress enacted the PPS, it directed the Secretary to make "proportional adjustments" as necessary to assure that aggregate payments made for the first two of the four years of the PPS transition period – hospital cost reporting periods beginning in Federal fiscal years 1984 and 1985 – would not be greater or less than payments that would have been made under the prior cost reimbursement system.  See Social Security Amendments of 1983 § 601(e),

adding §§ 1886(d)(2)(F), (d)(3)(C) and (e)(1) to the Act, (codified at 42 U.S.C. §§ 1395ww(d)(2)(F), 1395ww(d)(3)(C) and 1395ww(e)(1)).

90.     Congress required the Secretary to implement that PPS transition period budget neutrality requirement through a "proportional adjustment" to the target amount rate-of-increase ceilings and an "equal proportional adjustment" to the PPS standardized amounts under section 1886(e)(1) of the Act, 42 U.S.C. § 1395ww(e)(1).

91.     Section 1886(d)(7)(B) of the Act describes determinations establishing DRGs, the methodology for classifying discharges within DRGs, and the DRG weighting factors.  42 U.S.C. § 1395ww(d)(7)(B).

92.     Section 1886(d)(7) of the Act does not describe any other PPS payment determinations of the Secretary, such as determinations of the wage index, annual updates to the wage index, budget neutrality adjustments to account for the effects of annual updates to the wage index, the wage index rural floor, or budget neutrality adjustments accounting for the effects of rural floor.

93.     For example, the Act requires the Secretary to update the wage index annually and those updates must be made "in a manner that assures that the aggregate payments under [the PPS] in the fiscal year are not greater or less than those that would have been made in the year without such adjustment," Section 1886(d)(3)(E)(i) of the Act (codified at 42 U.S.C. § 1395ww(d)(3)(E)(i)); see also 71 Fed. Reg. at 48005, but no statute precludes administrative or judicial review of any adjustment made by the Secretary to comply with the budget neutrality requirement for updates to the wage index.  Moreover, the Secretary has ruled that the PPS wage index is a determination of the Secretary that is subject to administrative and judicial review pursuant to section 1878 of the Social Security Act, 42 U.S.C. § 1395oo.  D.C. Hosp. Ass'n

Wage Index Group Appeal ("DCHA"), reprinted in Medicare & Medicaid Guide (CCH) ¶ 41,025 (Jan. 15, 1993).

94.    Likewise, no statute precludes administrative or judicial review of any adjustment made by the Secretary to implement the statutory requirement in section 4410(b) of the BBA to assure that aggregate payments under the PPS are not greater or less than those payments that would have been made if the rural floor did not apply.

### C.    Regulation Implementing the Limited Statutory Exception to Review

95.    In the initial rulemaking implementing the Social Security Amendments of 1983, the Secretary adopted a regulation, codified at 42 C.F.R. § 405.1804, describing the provision in section 1878(g)(2) of the Act precluding administrative or judicial review of determinations listed in section 1886(d)(7) of the Social Security Act.  48 Fed. Reg. 39752, 39807, 39835 (Sept. 1, 1983) (interim final rule with comment period); 49 Fed. Reg. 234, 312, 322-23 (Jan. 3, 1984) (final rule).

96.    The regulation implementing section 1878(g)(2) of the Act, 42 C.F.R. § 405.1804, has not been changed since its adoption in 1984.  See 49 Fed. Reg. at 322-23; 42 C.F.R. § 405.1804 (2006).

97.    In the preamble to the interim final rule that adopted 42 C.F.R. § 405.1804, the Secretary discussed section 1878(g)(2) of the Social Security Act and stated that the regulation was intended only "to describe the matters that are not reviewable by the [Provider Reimbursement Review Board] or by the courts as provided in section 1886(d)(7) of the Act." 48 Fed. Reg. at 39785.  The preamble further explained that section 1886(d)(7) describes "[a] determination of the requirement, or the proportional amount, of any 'budget neutrality' adjustment effected under section 1886(e)(1) of the Act," id., and the adjustments under section 1886(e)(1) applied only to the first two PPS transition years (i.e., 1984 and 1985).

### D.     Expedited Judicial Review

98.     The PRRB is bound to apply the payment rates reflected in the annual PPS rules, as published. *See* 42 C.F.R. § 405.1867 (the Board is bound by CMS regulations issued under Title XVIII of the Act); Sarasota Mem'l Hosp. v. Shalala, 60 F.3d 1507, 1509 (11th Cir. 1995) (noting Board's recognition that "it is bound by Medicare regulations, including the . . . [PPS] wage index published by the Secretary"); Hunterdon/Somerset 2001 Wage Index Group v. Riverbend Benefits Administrator, PRRB Dec. No. 2004-D13 (Apr. 14, 2004) (granting EJR where the PRRB was without power to change the Secretary's policies used to calculate PPS wage indices).

99.     Section 1878(f) of the Act provides that a hospital that has filed an appeal to the PRRB "may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matter in controversy." 42 U.S.C. § 1395oo(f)(1).

100.     Section 1878(f)(1) of the Act further provides that "[t]he Board shall render such determination [of its authority to decide a question of law or regulations] within thirty days after the Board receives the request." Id.

101.     Section 1878(f) of the Act further provides that if the Board determines that it lacks authority to decide a question of or regulations, then the hospital may commence a civil action in this Court within 60 days of the date on which the hospital receives notification of the Board's determination. Id.

102.     Section 1878(f) of the Act further provides that if the Board fails to render a determination of its authority to decide a question of law or regulations within 30 days after its receipt of request for such determination, then the hospital may commence a civil action in this Court, within 60 days after the end of the 30-day period for the Board's determination, "with respect to the matter in controversy" in the appeal. Id; see also Methodist Hospitals of Memphis

v. Sullivan, 799 F. Supp. 1210, 1216 (D.D.C. 1992) (ruling that a hospital may commence an action in this Court with respect to the matter in controversy in the appeal to the PRRB if the Board denies a hospital's request for expedited judicial review without determining whether it has authority to decide the validity of a rule adopted by the Secretary), rev'd on other grounds sub nom., Administrators of Tulane Educational Fund v. Shalala, 987 F.2d 790, 794 n.4 (D.C. Cir. 1993) (noting that Secretary did not question the district court's subject matter jurisdiction to decide the validity of the rule at issue on appeal).

## VII.    PROCEEDINGS BELOW

### A.    Plaintiffs' Appeals for FFY 2007

103.    Cape Cod and Falmouth filed a group appeal from Secretary's determination of the standardized amount and rural floor budget neutrality adjustment to the standardized amount in the final PPS rule for FFY 2007 by letter dated January 25, 2007. That appeal was assigned PRRB case number 07-0705G. That appeal was timely filed within 180 days of the Secretary's publication of notice in the Federal Register on October 11, 2006 of the Secretary's determination of the payment rates under PPS for FFY 2007.

104.    Flushing, Brookdale, and Jamaica filed a group appeal from Secretary's determination of the standardized amount and rural floor budget neutrality adjustment to the standardized amount for FFY 2007 by letter dated January 26, 2007. That appeal was assigned PRRB case number 07-0729G. That appeal was timely filed within 180 days of the Secretary's publication of notice in the Federal Register on October 11, 2006 of the Secretary's determination of the payment rates under PPS for FFY 2007.

105.    On July 27, 2007, each of the plaintiff hospitals submitted requests to the PRRB in case numbers 07-0705G and 07-0729G for expedited judicial review of the validity of the

determination of the Secretary in the final PPS rule for FFY 2007 of the rural floor budget neutrality adjustment and the standardized amount for FFY 2007.

106.    By letter dated August 24, 2007, the PRRB acknowledged receipt of the plaintiffs' requests for expedited judicial review in PRRB case numbers 07-0705G and 07-0729G.

107.    The PRRB's August 24, 2007 letter denied the requests for expedited judicial review in PRRB case numbers 07-0705G and 07-0729G, concluding that Board "lacks jurisdiction over the appeal [sic] because review of budget neutrality adjustments is precluded by statute and regulations.    42 U.S.C. § 1395ww(d)(7); 42 U.S.C. § 1395oo(g)(2); 42 C.F.R. § 405.1804."

108.    The hospitals timely commenced this action within 60 days of the Board's August 24, 2007 determination pursuant to 42 U.S.C. § 1395oo(f)(1).

**B.**    **Appeals for FFY 2008**

109.    Cape Cod and Falmouth timely filed a group appeal from the Secretary's determination of the standardized amount, the positive Rural Floor Adjustment to the standardized amount, and the rural floor budget neutrality adjustment to the wage index in the final PPS rule for FFY 2008 by letter dated August 15, 2007.    That appeal was assigned PRRB case number 07-2562G.    That appeal was timely filed within 180 days of the Secretary's determination of the payment rates under PPS for FFY 2008, which were posted on the CMS website on August 1, 2007.

110.    On August 15, 2007, Cape Cod and Falmouth submitted a request in case number 07-2562G for expedited judicial review of the validity of the determination of the Secretary in the final PPS rule for FFY 2008 of the standardized amount, the positive Rural Floor Adjustment

to the standardized amount, and rural floor budget neutrality adjustment to the wage index for FFY 2008.

111.   By letter dated September 12, 2007, the PRRB acknowledged receipt of the request for expedited judicial review in PRRB case number 07-2562G.

112.   The PRRB's September 12, 2007 letter denied the request for expedited judicial review in PRRB case number 07-2562G, concluding that the Board "lacks jurisdiction over the appeal because review of budget neutrality adjustments is precluded by statute and regulations. 42 U.S.C. § 1395ww(d)(7); 42 U.S.C. § 1395oo(g)(2); 42 C.F.R. § 405.1804."

113.   The hospitals timely commenced this action within 60 days of the Board's September 12, 2007 determination pursuant to 42 U.S.C. § 1395oo(f)(1).

114.   By letter dated November 6, 2007, Cape Cod and Falmouth also timely filed a group appeal from the Secretary's October 10, 2007 corrected determination of the FFY 2008 standardized amount and rural floor budget neutrality adjustment to the wage index.  That appeal was assigned PRRB case number 08-0184G.

115.   On November 6, 2007, Cape Cod and Falmouth submitted a request in case number 08-0184G for expedited judicial review of the validity of the Secretary's October 10, 2007 corrected determination of the FFY 2008 standardized amount and rural floor budget neutrality adjustment to the wage index.

116.   By letter dated November 28, 2007, the PRRB acknowledged receipt of the request for expedited judicial review in PRRB case number 08-0184G.

117.   The PRRB's November 28, 2007 letter denied the request for expedited judicial review in PRRB case number 08-0184G, concluding that the Board "lacks jurisdiction over the appeal because review of budget neutrality adjustments is precluded by the statute and regulations.  42 U.S.C. § 1395ww(d)(7); 42 U.S.C. § 1395oo(g)(2); 42 C.F.R. § 405.1804."

118.    Pursuant to 42 U.S.C. § 1395oo(f)(1), the hospitals timely challenged the Board's November 28, 2007 determination by amending the complaint in this action within 60 days of the Board's determination.

## VIII.    STANDARD OF REVIEW AND ASSIGNMENTS OF ERROR

119.    Section 1878(f) of the Act, 42 U.S.C. § 1395oo(f) provides for review of PPRB's decisions below and the Secretary's determination of the PPS payment rates at issue pursuant to the applicable provisions of the Administrative Procedure Act ("APA"). The applicable provisions of the APA require a reviewing court to set aside agency action that is found to be contrary to law, arbitrary, capricious, unsupported by substantial evidence, in excess of statutory authority or otherwise not in accordance with law. 5 U.S.C. § 706.

120.    This Court has jurisdiction to decide the validity of the Secretary's PPS payment determinations in the final PPS rules for FFY 2007 and FFY 2008 pursuant to 42 U.S.C. § 1395oo(f)(1) because the PRRB failed to determine that it has authority to determine that question of law or regulations within the period required by section 1395oo(f)(1), and the PRRB lacks authority to determine the validity of the Secretary's determinations in those rules. See Methodist Hospitals of Memphis, 799 F. Supp. 1210, rev'd on other grounds, Administrators of Tulane Educational Fund, 987 F.2d 790; see also 42 C.F.R. § 405.1867 (the Board is bound by CMS regulations issued under Title XVIII of the Act).

121.    The PRRB's conclusion that "review of budget neutrality adjustments is precluded by statute and regulations" is invalid because it is contrary to the plain meaning and manifest intent of the controlling statutory provisions the Board relied upon, it is inconsistent with the agency's statements of intent when it adopted the implementing regulation the Board relied upon, it is inconsistent with the strong presumption in favor of judicial review, and it is otherwise arbitrary and capricious and contrary to law. See 42 U.S.C. §§ 1395oo(a),

1395oo(g)(2), 1395ww(d)(7), 1395ww(e)(1); 42 C.F.R. § 405.1804; 48 Fed. Reg. at 39785; Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670-72 (1986) (the Secretary has a heavy burden to overcome the strong presumption of judicial review).

122.    The Secretary's determinations of the rural floor budget neutrality adjustments in the final PPS rules for FFY 2007 and FFY 2008 violate section 4410(b) of the BBA because the Secretary's adjustments are not budget neutral but instead result in aggregate payments made under the PPS for the operating costs of inpatient hospital services that are less than those which would have been for discharges in FFY 2007 and FFY 2008 if the rural floor had never been implemented.

123.    The Secretary's determination and application of the rural floor budget neutrality adjustment to the standardized amount for FFY 2007 are inconsistent with the plain language of section 4410(b), which requires the Secretary to adjust the wage index, and does not authorize the Secretary to adjust the standardized amount, for the effect of the rural floor.

124.    The Secretary's determination and application of the rural floor budget neutrality adjustment to the standardized amount for FFY 2007 are arbitrary and capricious, violate the notice and comment rulemaking procedure mandated in 5 U.S.C. § 553, and are otherwise contrary to law because the Secretary made an error in computing the cumulative rural floor budget neutrality adjustment to the standardized amount for FFY 2007 and for prior fiscal years, that error was brought to the agency's attention in a comment on the proposed PPS rule for FFY 2007, the Secretary failed to acknowledge or respond to that comment in the final PPS rule for FFY 2007, the Secretary failed to correct the error in establishing the rural floor budget neutrality adjustment and the standardized amount for FFY 2007, and, as a result, aggregate payments made under the PPS for discharges in FFY 2007 for the operating costs of inpatient hospital services were less than those which would have been for discharges in FFY 2007 if the rural

floor had never been established.  See County of Los Angeles v. Shalala, 192 F.3d 1005, 1020-23 (D.C. Cir. 1999); Alvarado Community Hosp. v. Shalala, 155 F.3d 1115, 1125 (9th Cir. 1998), as amended by 166 F.3d 950 (1999).

125.    The Secretary's determination and application of the rural floor budget neutrality adjustment to the standardized amount for FFY 2008 are arbitrary and capricious, violate the notice and comment rulemaking procedure mandated in 5 U.S.C. § 553, and are otherwise contrary to law because the Rural Floor Adjustment made to the standardized amount in connection with the change in implementation of the rural floor budget neutrality requirement for FFY 2008 accounted only for the rural floor budget neutrality adjustment to the standardized amount for FFY 2007, that adjustment did not reverse and restore to the standardized amount the total cumulative effect of all prior adjustments that were made to the standardized amount for the effect of the rural floor in prior fiscal years before FFY 2007, this problem was brought to the agency's attention in a comment on the proposed PPS rule for FFY 2008, the Secretary failed to acknowledge or respond to that comment in the final PPS rule for FFY 2008, the Secretary failed to correct this error in establishing the standardized amount for FFY 2008, and, as a result, aggregate payments made under the PPS for discharges in FFY 2008 for the operating costs of inpatient hospital services will be less than those which would have been for discharges in FFY 2008 if the rural floor had never been established.  See County of Los Angeles, 192 F.3d at 1020-23; Alvarado Community Hosp., 155 F.3d at 1125, as amended by 166 F.3d 950.

126.    The Secretary's determinations of the PPS payment rates in the final PPS rules for FFY 2007 and FFY 2008 are arbitrary and capricious, violate the notice and comment rulemaking procedure mandated in 5 U.S.C. § 553, and are otherwise contrary to law because the Secretary failed to give affected hospitals adequate notice of the actual calculation of the rural

floor budget neutrality adjustments for those years, and for prior years, and the Secretary did not afford hospitals a meaningful opportunity to comment on those adjustments.

127.    The Secretary's determination of the PPS payment rates in the final PPS rule for FFY 2008 is arbitrary and capricious, violates the notice and comment rulemaking procedure mandated in 5 U.S.C. § 553, and is otherwise contrary to law because the proposed and final PPS rule for FFY 2008 did not state the basis and purpose for the change in implementation of the rural floor budget neutrality requirement of section 4410(b) of the BBA.

## IX.    RELIEF REQUESTED

128.    The Hospitals request an Order:

A.    declaring invalid the Secretary's implementation of the wage index rural floor budget neutrality adjustments for FFYs 2007 and 2008;

B.    requiring the Secretary promptly to correct the calculation of the wage index rural floor budget neutrality adjustments for FFYs 2007 and 2008, and to pay the Hospitals all sums due as a result of that correction, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.    requiring the Secretary to pay legal fees and costs of suit incurred by the Hospitals; and

D.    providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

Christopher L. Keough
 DC Bar No. 436567
Stephanie A. Webster
 DC Bar No. 479524
John M. Faust
 DC Bar No. 433553
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
(202) 639-6500 (phone)
(202) 639-6604 (fax)

Counsel for Plaintiffs

Dated: December 11, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing First Amended Complaint for Declaratory and Injunctive Relief and Sums Due Under the Medicare Act has been served on Defendant on this the 11th day of December 2007, as follows:

Civil Process Clerk *(By hand delivery)*
U.S. Attorney for the District of Columbia
555 Fourth Street, N.W.
Washington, DC 20530

Michael O Leavitt, Secretary *(By certified U.S. Mail)*
United States Department of Health and Human Services
200 Independence Avenue, S.W.
Washington, D.C. 20201

U.S. Attorney General *(By certified U.S. Mail)*
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530


Christopher L. Keough
DC Bar No. 436567
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C.  20004-1008
(202) 639-6500 (phone)
(202) 639-6604 (fax)